```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
DESI GAUSE,

                    Plaintiff,
                                              MEMORANDUM & ORDER
          -against-                           17-CV-2543(JS)(GRB)

SUFFOLK COUNTY POLICE, FIRST PRECINCT;
TOWN OF BABYLON, MARYANN ANDERSON,
Town Inspector[1]; SUFFOLK COUNTY POLICE
SERGEANT (1); SUFFOLK COUNTY POLICE
IN PATROL CAR (2); and SUFFOLK POLICE
IN PATROL CAR PARTNER;[2]

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:           Desi Gause, pro se
                         55 Irving Avenue
                         Wyandanch, NY 11798


For Defendants:
Suffolk County Police,
First Precinct           Arlene S. Zwilling, Esq.
                         Suffolk County Attorney
                         H. Lee Dennison Building, Fifth Floor
                         100 Veterans Memorial Highway
                         P.O. Box 6100
                         Hauppauge, NY 11788-0099

Maryann Andersen, Senior
Zoning Inspector for the
Town of Babylon          Mark A. Cuthbertson, Esq.
                         Matthew Joseph DeLuca, Esq.
                         Law Offices of Mark A. Cuthbertson
                         434 New York Avenue
```

---

[1] Maryann Andersen, improperly named as "Maryan Anderson" or "Mary Anderson" is the Senior Zoning Inspector for the Town of Babylon. (See, Anderson Aff., Docket Entry 10-3, ¶ 1.) The Clerk of the Court is directed to amend the caption to reflect the correct spelling of defendant's name.

[2] The Clerk of the Court is directed to amend the caption and add the following three defendants: Suffolk County Police Sergeant (1); Suffolk County Police in Patrol Car (2); and Suffolk County Police in Patrol Car Partner. (See, Compl. ¶ III.)

Huntington, NY 11743

SEYBERT, District Judge:

On April 28, 2017, pro se plaintiff Desi Gause ("Plaintiff") filed a Complaint against the Suffolk County Police, First Precinct (the "First Precinct"); Maryann Andersen, Town Inspector for the Town of Babylon ("Andersen")[3]; and three unidentified Suffolk County law enforcement officers--one police sergeant and two patrol car officers--alleged to have visited Plaintiff's property on April 27, 2017 ("John Doe Officers" and collectively, "Defendants"). The Complaint alleges a deprivation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983").

Plaintiff's Complaint is accompanied by an application to proceed in forma pauperis and an Order to Show Cause seeking the entry of a Temporary Restraining Order and a Preliminary Injunction. (See, In Forma Pauperis ("IFP") Motion, Docket Entry 2; Gause Temporary Restraining Order ("TRO") Motion, Docket Entry 3.) By Electronic Order dated May 2, 2017 (the "Electronic Order"), the undersigned denied Plaintiff's application for a TRO and deferred ruling on the application for a Preliminary Injunction

---

[3] Plaintiff lists only four Defendants (see Compl. ¶ III.B.), and does not include the Town of Babylon as a separate Defendant. Thus, it appears that Plaintiff's inclusion of the Town of Babylon, together with Andersen, is to indicate that she is the Town Inspector for the Town of Babylon. If Plaintiff intended to include the Town of Babylon as a party separate from Andersen, he may so amend his Complaint in this regard.

pending the determination of Plaintiff's IFP Motion. The Electronic Order also directed Defendants to respond to the Plaintiff's application for a Preliminary Injunction within two weeks of service of the Electronic Order and Defendants have timely complied with the Electronic Order. (See Docket Entries 6, 10, 11, and 12.)

Upon review of Plaintiff's declaration in support of his application to proceed in forma pauperis, the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Accordingly, Plaintiff's application to proceed in forma pauperis is GRANTED and the Court ORDERS service of the Complaint by the United States Marshal Service ("USMS") without prepayment of the filing fee on Defendants. Plaintiff's Order to Show Cause seeking the entry of a Preliminary Injunction is DENIED for the reasons that follow.

BACKGROUND

I.  The Complaint

Plaintiff's sparse Complaint is submitted on the Court's Section 1983 complaint form and, liberally construed, purports to allege a deprivation of his Fourth and Fourteenth Amendment rights. More specifically, Plaintiff's statement of claim alleges, in its

entirety:[4]

> On or about 4/27/2017, the Suffolk County Police along with the Town of Babylon violated my home and property and without a warrant or my presence Broke in my home kicking my door open and unlawfully entered my home without my or anybody's permission to do so, and boarded up my home, leaving me homeless on the street for more repairs that could of been repaired as I was doing. "Deprivation of property", Blacks are targeted and treated unfair by the Town of Babylon, we are treated like animals, unhumane, our rights are violated.

(Compl. ¶ IV.)  Plaintiff has annexed to his Complaint a two-page, handwritten supplement (Compl. at 6-7), that reads as follows:

> This is an incident that occurred 04/27/2017, round 10 and 1 p.m., 8 a.m., I went to the Huntington Jeep and Chrysler building, received a call the Town of Babylon with Marie Anderson and Suffolk Police broke in to your house without a search warrant and kicked the door in and went through my home violating my privacy and fourth amendment, because of people sleeping in a tent in the backyard. "1973 Wounded Knee Act" then the begin to board the house up and said I have to repair a code violation, which I did and I have the documents showing an inspection was made and passed, the people in the tent were grown adults, drinking, and smoking their stuff or partying in privacy, and enemy of mine Tony Harrison and Kity, his girl, make anomynus calls by the dozen and threatens me and my family in the tent because they won't let her enter, so now she involves the Town and Police with dozens of bogus calls as if she is my neighbor. She lives six houses down the block and noone will let her come inside to chill.

---

[4] Excerpts from the Complaint and Order to Show Cause are reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

> They have their own jet set and crowd that pays rent to the tent holder, "Gia Calloway", my niece. My rights are being violated and I am being deprived of entrance to my home. Mary Anderson of the Town of Babylon, along with the Suffolk County Police, First Precinct, took the law in their hand without a warrant from a judge and unlawfully broke into my home and boarded it up, which was unlawful and unconstitutional. They give the white people time to fix any violations from 30 days up to a year, one of the Town workers explained to me today and said they only board the blacks up because they don't know their rights and usually they don't do nothing about it and walk away from their home, "deprivation of property" under the fifth, fourth, sixth and 14 Amendment of the US Constitutions. I was like an Order to Show Cause to take off the boards and go back into my home. I have children coming home from college for the Summer, Temple University, and we have no where to go. That's been our home over 18 years my parents own it, it's the Estate of Della L. Gause. I was an Order letting me enter my home with No Town or Police consequences until this can be resolved.

(Compl. at 6-7.)

In the space on the form Complaint that calls for a description of any claimed injuries, Plaintiff alleges: "mental anguish, mental depression and anxiety inter-alia, high blood pressure cold at night from sleeping in car." (Compl. ¶ IV.A.) For relief, Plaintiff seeks a damages award in the amount of one million dollars as well as an order directing Defendants to "take the boards off of my home and stop violation of my fourth and fifth amendment [rights] . . . ." (Compl. ¶ V.)

5

II. <u>The Application for a Preliminary Injunction</u>

Plaintiff's Order to Show Cause seeks an order, "pursuant to Rule 65 FRCP enjoining the defendant during the pendency of this action from keeping me from going inside my home and putting boards on my home" and "depriving m3 of my home and property under the Fifth Amendment U.S.C.A." (<u>See</u> Proposed Order for Preliminary Injunction and Restraining Order, Docket Entry 3-1.) Plaintiff alleges, as grounds for his motion, that he and his family members have suffered "constant harrassment and violation of [his] quiet time." (<u>See</u> Gause TRO Motion at 1.) Plaintiff claims that he will suffer "immediate and irreparable harm", absent injunctive relief, because he is "on the outside of my home with all my valuables, and I have very important documents needed answer and I need access in and out of my home, my children will be home from college with no where to go." (<u>See</u> Gause TRO Motion at 2, ¶ 1.)

Plaintiff also claims that he is suffering serious, immediate harm in the form of "mental deprivation, mental anguish, depression, all of my medication and clothes are in my home, I need bath . . . ." (<u>See</u> Gause TRO Motion at 2, ¶ 2.) Plaintiff alleges that he hasn't "caused no harm to no one and only want to be back in my home" and that the harm to him absent an injunction is greater than the harm to the Defendants is an injunction is entered "[b]ecause my opponent goes home to the luxury of his home and can cook, be the lay down to watch tv, make love to their spouse and

children, my children are coming home from college to be sleeping in care and the street." (See Gause TRO Motion at 2, ¶ 4.)

In response to the Court's Electronic Order, Andersen filed papers in opposition to the Plaintiff's Motion for a Preliminary Injunction on May 17, 2017 (see Anderson's Opp., Docket Entry 10) and the County filed opposition papers on May 10, 2017, May 18, 2017, and May 30, 2017 (see Docket Entries 6, 11, and 12.)[5]

## DISCUSSION

### I. In Forma Pauperis Application

Upon review of Plaintiff's declaration in support of the application to proceed in forma pauperis, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fees. See 28 U.S.C. § 1915(a)(1). Therefore,

---

[5] Relying on the date of the alleged event included in the Complaint, April 27, 2017, the County apprised the Court by letter dated May 10, 2017 that, following a search of the Suffolk County Police Department records, the County has no records of any incident on April 27, 2017 concerning the boarding up of Plaintiff's home. (See Docket Entry 6.) By letter dated May 18, 2017 the County supplemented its response to advise that it has learned that the event in question may have occurred on April 21, 2017, and that it would search its records for any incidents at Plaintiff's address on that date. (See Docket Entry 11.) By letter dated May 30, 2017, the County apprised the Court that the search of its records revealed that a search warrant was executed at Plaintiff's residence on April 21, 2017 and that, "[i]n conjunction with that warrant execution, seven people were arrested at the premises on charges related to illegal drugs, including [Plaintiff]." (See Docket Entry 12.) A copy of the Search Warrant, signed by the Honorable William J. Condon, Supreme Court, State of New York, Suffolk County, is attached to the County's letter together with the Application and Affidavit for Search Warrant.

Plaintiff's request to proceed in forma pauperis is GRANTED.

II. Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "'detailed factual allegations'" are not required, "[a] pleading

8

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

III. Application For a Preliminary Injunction

It is well-established that "interim injunctive relief is an extraordinary and drastic remedy which should not be routinely granted." Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (internal quotation marks and citation omitted). To obtain a preliminary injunction, the movant "must show irreparable harm absent injunctive relief, and either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor." Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 113-14 (2d Cir. 2006) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979) (per curiam)); see also Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 215 (2d Cir. 2012); Citigroup Global Mkts., Inc. V. VCG Special Opportunities Master Fund, Ltd., 598 F.3d 30, 35 (2d Cir. 2010); see also FED. R. CIV. P. 65.

"Such relief, however, 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005)

9

(quoting Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L. Ed. 2d 162 (1997)).  When the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," as is the case here, the burden is even higher. Citigroup Global Mkts., 598 F.3d at 35, n. 4 (internal quotation marks and citation omitted); see also Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996).  A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Citigroup Global Mkts., 598 F.3d at 35 n.4 (internal quotation marks and citations omitted).  Ultimately, the decision to grant or deny this "drastic" remedy rests in the district court's sound discretion. See, e.g., Moore, 409 F.3d at 511 (A district court has "wide discretion in determining whether to grant a preliminary injunction.").

    A.    <u>Likelihood of Success on the Merits or Sufficiently Serious Questions Going to the Merits to Make Them a Fair Ground for Litigation and Balance of the Hardships</u>

Plaintiff's claims are premised on his allegations that the Defendants: (1) "[W]ithout a warrant or my presence, broke in my home . . . and unlawfully entered . . ."; and (2) unlawfully "boarded up my home, leaving me homeless." (Compl. ¶ IV.)

    1.    <u>Fourth Amendment Claim Arising from the Alleged Warrantless Search of Plaintiff's Home</u>

It is a "basic principle of Fourth Amendment law that

10

searches and seizures inside a home without a warrant are presumptively unreasonable." Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284, 1290, 157 L. Ed. 2d 1068 (2004) (quoting Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980) (internal quotation marks and citation omitted)). However, "the warrant requirement is subject to certain exceptions." Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006).

      Here, in response to the Order to Show Cause, the County has submitted a copy of a Search Warrant, bearing CC# 17-227112, that authorizes the "search of the premises located at 55 Irving Avenue, Wyandanch, NY." (See Docket Entry 12-1 at 1.) The search warrant reflects that it was signed by the Honorable William J. Condon, Supreme Court, State of New York, Suffolk County, on April 20, 2017, the day before the April 21st search. (See Docket Entry 12-1 at 2.) Thus, Plaintiff's claim that Defendants' entry to his home was unauthorized and was without a warrant is unlikely to be successful. Nor has Plaintiff established that there are sufficiently serious questions going to the merits of his Fourth Amendment claim with a balance of hardships tipping decidedly in his favor. Ivy Mar Co. v. C.R. Seasons Ltd., 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); Hancock v. Essential Resources, Inc., 792 F. Supp. 924, 928

(E.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals. . . ."). Thus, Plaintiff has not established a proper basis for the entry of a Preliminary Injunction on his Fourth Amendment claim.

  2. <u>Fourteenth Amendment Claim That The Defendants Unlawfully Boarded Up Plaintiff's Home</u>

Plaintiff also appears to claim that Defendants have deprived him of his Fourteenth Amendment right to due process in connection with the alleged unlawful boarding up of Plaintiff's home and denying him access thereto. "Causes of action based on due process violations require 'the existence of a federally protectable property right and the denial of such a right in the absence of either procedural or substantive due process.'" <u>Dibbs v. Roldan</u>, 356 F. Supp. 2d 340, 353 (S.D.N.Y. 2005) (quoting <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 262 (2d Cir. 1999)). "'Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense.'" <u>Dibbs</u>, 356 F. Supp. 2d at 353 (quoting <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 211 (2d Cir. 1995)).

To succeed on this claim, Plaintiff must show that the Defendants "so grossly abused their authority that they deprived him of a constitutionally protected property interest." <u>Rackley v. City of New York</u>, 186 F. Supp. 2d 466, 479 (S.D.N.Y. 2002). "Gross abuse occurs 'only where the government action challenged is so outrageous and arbitrary that it 'shocks the conscience.'"

Dibbs, 356 F. Supp. 2d 353 (quoting Rackley, 186 F. Supp. 2d at 479. "Procedural due process 'require[s] notice and an opportunity to be heard prior to the deprivation of a property interest . . . .'" Dibbs, 365 F. Supp. 2d at 353 (quoting United States v. Premises & Real Prop. at 4492 S. Livonia Rd., Livonia, N.Y., 889 F.2d 1258, 1263 (2d Cir. 1989)) (ellipsis in original).

      Here, in response to the Order to Show Cause, Andersen has submitted an affidavit wherein she alleges that, on September 1, 2016, she was called by the First Precinct to inspect the premises known as 55 Irving Avenue, Wyandanch, New York, concurrent with the Suffolk County Police Department's ("SCPD") execution of a search warrant. (See Andersen Aff. ¶ 4.) Andersen alleges that she, together with a plumbing inspector and a representative from the Fire Marshal's Office, inspected the property and discovered that Plaintiff was illegally operating the property as a rooming house. (Anderson Aff. ¶ 4.) Based upon Andersen's observations at the inspection, she cited Plaintiff for five violations of the Town Code, and has attached copies of the accusatory instruments to her affidavit. (Andersen Aff. ¶ 6 and Ex. B annexed thereto.)

      Andersen also alleges that the Fire Marshal and plumbing inspector discovered, respectively, that the wiring and plumbing in the house was substandard and that a permit had not been issued. (Andersen Aff. ¶ 7.) As a result of these findings, Andersen

"determined that the house should be condemned and deemed unsafe for occupancy until the house was brought into compliance with the applicable codes and regulations." (Andersen Aff. ¶ 7.) Plaintiff was advised that a contractor employed by the Town (CIPCO) would arrive later that day to board up the house, and that, upon his "submission of the appropriate documentation to the Fire Marshal's Office certifying that the house's electrical wiring were to code, the boards would be removed and Plaintiff could again occupy the house." (Andersen Aff. at ¶¶ 7-8.)

Andersen alleges that she next returned to the premises on December 27, 2016, accompanied by Plaintiff and a plumber he had employed, to confirm whether Plaintiff had remedied the violations for which he had been cited on September 1, 2016. (Andersen Aff. ¶ 9.) Andersen alleges that it appeared to her that the premises were no longer being used as a rooming house, and that the plumber and Plaintiff advised her that the problems with the plumbing and electrical work had not yet been completed. (Andersen Aff. ¶ 9.) In addition, although the property remained condemned, Andersen observed that some of the boards had been removed and that Plaintiff may have illegally entered the premises. (Andersen Aff. ¶ 10.)

Andersen alleges that she next had contact with the Plaintiff during the first week of April 2017 when she was again called by the SCPD to inspect Plaintiff's property. Andersen

14

describes that, even though Plaintiff was unauthorized to be inside his home, he answered the door and was dressed in only his underwear. (Andersen Aff. ¶ 11.) Andersen alleges that they agreed that she would return the following Tuesday to inspect the property. (Andersen Aff. ¶ 11.) On April 11, 2017, Andersen alleges that she returned to the property with two SCPD officers. (Andersen Aff. ¶ 12.) Upon her entry to the property, Andersen describes that the electrical wiring remained visibly substandard. (Andersen Aff. at ¶ 12.) Plaintiff informed Andersen that he had submitted the appropriate documentation for the electrical work and, upon further investigation, Andersen discovered that the documentation had not been filed and thus the home should not have been occupied. (Andersen Aff. ¶ 12.) Accordingly, Andersen returned to the property on April 27, 2017 with the SCPD and employees from the Town's Department of Public Works and CIPCO and CIPCO re-boarded all of the doors and windows. (Anderson Aff. ¶ 15.) Andersen alleges that she has reviewed the records kept by the Town and, as of the May 16, 2017 date of her affidavit, Plaintiff has failed to submit the required documentation to un-board the house. (Andersen Aff. ¶ 16.)

Given that the reasons set forth by Andersen for the boarding up of Plaintiff's property are not "arbitrary, conscience-shocking, or oppressive in a constitutional sense," Plaintiff's substantive due process claim has little likelihood of

15

success. Nor has Plaintiff set forth sufficiently serious questions going to the merits of his substantive due process claim and that the balance of the hardships tips decidedly in Plaintiff's favor. Similarly, Plaintiff's procedural due process claim is unlikely to be successful given that Defendants have submitted copies of the Notice provided to Plaintiff back in September 2016 of the alleged plumbing and electrical wiring violations that caused the boards to be installed on September 1, 2016. (See Andersen Aff. ¶ 6, and Ex. B annexed thereto.) As Andersen's affidavit makes clear, once Plaintiff files the proper documentation with the Town concerning the plumbing and electrical work, the boards will be removed and Plaintiff will be permitted to occupy his property. (Andersen Aff. ¶ 8.) Because Plaintiff has not provided proper documentation to the Town, nor does he even claim that he has completed the necessary repairs, the safety hazards cited by the Town apparently continue and Plaintiff was unauthorized to remove the boards and re-enter the property. Thus, Plaintiff's procedural due process claim has little likelihood of success, nor are there sufficiently serious questions going to the merits with a balance of hardships tipping decidedly in Plaintiff's favor.

Given that Plaintiff has not established that there is either a likelihood of success on the merits or that there are sufficiently serious questions going to the merits with a balance

of hardships tipping decidedly in his favor, the Court need not address the irreparable harm prong and Plaintiff's application for a Preliminary Injunction is DENIED.

IV. <u>Valentin Order</u>

The USMS will not be able to effect service of the Summonses and the Complaint on the unidentified Defendants without more information. The Second Circuit has held that district courts must provide incarcerated <u>pro</u> <u>se</u> litigants with reasonable assistance in investigating the identity of such "John Doe" defendants. <u>See</u> <u>Valentin v. Dinkins</u>, 121 F.3d 72, 75-76 (2d Cir. 1997) (<u>per</u> <u>curiam</u>).

Accordingly, the Court ORDERS that the Clerk of the Court serve a copy of the Complaint together with this Order on the Suffolk County Attorney. The Suffolk County Attorney's Office is requested to attempt to ascertain the full names of the unnamed individuals who are described in the Complaint and to provide to the Court and to Plaintiff their names and the address(es) where these individuals can be served within thirty (30) days of the date that this Order is served upon it. Once the information is provided to the Court by the Suffolk County Attorney's Office, Plaintiff's Complaint shall be deemed amended to reflect the full names of the unnamed Defendants, Summonses shall be issued as to these Defendants, and the USMS shall serve them.

The Suffolk County Attorney need not undertake to defend

or indemnify these individuals at this juncture. This Order merely provides a means by which Plaintiff may properly name and serve the unnamed Defendants as instructed by the Second Circuit in <u>Valentin</u>.

V. <u>Claims Against the First Precinct</u>

Plaintiff's claims against the First Precinct are not plausible because it has no independent legal identity. It is well-established that "under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." <u>Davis v. Lynbrook Police Dep't</u>, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); <u>see also</u> <u>Jenkins v. City of N.Y.</u>, 478 F.3d 76, 93 n. 19 (2d Cir. 2007) (holding that New York City Police Department is a non-suable entity); <u>Lawrence v. Suffolk Cty. Police Dep't</u>, 13-CV-2357, 2013 WL 3364344, at *3 (E.D.N.Y. June 28, 2013) (Suffolk County Police Department and First Precinct are not a suable entities). Thus, Plaintiff's claims against the First Precinct are not plausible and are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii); 1915A(b).[6]

---

[6] Even liberally construing the Complaint to assert claims against Suffolk County, Plaintiff's claims must fail. In order to state a plausible claim against a municipality, Plaintiff must allege that the unconstitutional "'action pursuant to official municipal policy' caused their injury." <u>Connick v. Thompson</u>, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Plaintiff fails to allege the existence of any formal policy, practice, or custom of Suffolk County which caused his alleged constitutional deprivations. Accordingly, Plaintiff has failed to state a

CONCLUSION

For the reasons set forth above, Plaintiff's application to proceed <u>in forma pauperis</u> is GRANTED and his application for a Preliminary Injunction is DENIED. The Court ORDERS that the Clerk of the Court serve a copy of the Complaint together with this Order on the Suffolk County Attorney. The Suffolk County Attorney's Office is directed to attempt to ascertain the full names of the unnamed individuals who are described in the Complaint and to provide to the Court and to Plaintiff their names and the address(es) where these individuals can be served within thirty (30) days of the date that this Order is served upon it. Once the information is provided to the Court by the Suffolk County Attorney's Office, Plaintiff's Complaint shall be deemed amended to reflect the full names of the unnamed Defendants, Summonses shall be issued as to these Defendants, and the USMS shall serve them.

Plaintiff's Section 1983 claims against the First Precinct are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore <u>in forma pauperis</u> status is DENIED for the purpose of any appeal. See <u>Coppedge v. United States</u>, 369 U.S. 438, 444-

---

claim against Suffolk County.

45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to amend the caption as outlined supra at 1, n.1 and n.2.  The Clerk of the Court is further directed to mail a copy of this Order to the pro se Plaintiff.

                                        SO ORDERED.


                                        /s/ JOANNA SEYBERT
                                        Joanna Seybert, U.S.D.J.

Dated: July   20  , 2017
       Central Islip, New York